DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Ottawa County Municipal Court, Small Claims Division, in which the trial court ordered appellant, Bank of America, N.A. ("Bank of America"), to reimburse appellee, Robert Nesper, funds paid out of appellee's bank account as a result of a forgery by appellee's wife. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On July 5, 2002, appellee filed a complaint against Bank of America in the Small Claims Division of the Ottawa County Municipal Court. In the complaint, appellee alleged that his wife, Patricia Nesper, had forged appellee's name to a check ("check no. 275") in the amount of $2,000, which was honored by Bank of America. Appellee sought the return of $2,000 to his account, plus an additional $40 in filing fees. On August 1, 2002, Bank of America filed an answer and, on that same day, a hearing was held by magistrate Jeffrey Vild.
 {¶ 3} Appellee testified at the hearing that he has bank accounts in only his name at both Bank of America and Huntington Bank. Appellee further testified that in early 2002, he became aware that his wife had stolen blank checks for both accounts and forged his name to several checks. Appellee also testified that, as of the time of hearing, he was only seeking the return of $2,000 for Bank of America check no. 275; however, he might seek the return of other moneys in the future.
 {¶ 4} Appellee stated that he kept the check pads for his two accounts hidden in different places in a room which could be locked; however, the room was not locked all of the time. Appellee further stated that he knew his wife had engaged in financial misconduct both before and after their marriage, which included forging his name on applications for credit cards and a contract to purchase a vehicle.
 {¶ 5} On cross-examination, appellee testified that he and his wife continued to live together, in spite of her financial misconduct. Appellee further stated that, when confronted, his wife refused to discuss the forgery issue with him.
 {¶ 6} On its own behalf, Bank of America presented the affidavit of bank investigator Karyn R. King. King stated in her affidavit that she attempted to contact appellee's wife regarding appellee's claim; however, Mrs. Nesper refused to speak with King. King also stated that local authorities refused to prosecute Mrs. Nesper for forgery, because they considered it to be a "civil matter" between a husband and wife. Based on the foregoing information, King concluded that appellee's claim for reimbursement should be denied.
 {¶ 7} On September 26, 2002, the magistrate filed his report and recommendations, in which he found that requiring Bank of America to reimburse appellee for money allegedly stolen through forgery by appellee's wife "seems to border on unjust enrichment." The magistrate further found that the circumstances of this case raise issues of potential abuse that could cause banks in general to be reluctant to cash checks between spouses. Accordingly, the magistrate recommended that appellee's claim for reimbursement be denied.
 {¶ 8} On October 8, 2002, appellee filed objections to the magistrate's report, in which he argued that, as a matter of law, he is not responsible for his wife's financial misconduct. Appellee further argued that banks have a responsibility to refuse to honor forged checks, regardless of the marital status of the forger. On March 19, 2003, the trial court, after reviewing the entire record, which included a transcript of the hearing in
 {¶ 9} small claims court, filed a judgment entry in which it found that Bank of America failed to establish that appellee's failure to exercise ordinary care substantially contributed to the forgery of his signature on check no. 275. Accordingly, the trial court found appellee's objections to the magistrate's report well-taken and granted judgment to appellee in the amount of $2,000, plus court costs and statutory interest. A timely notice of appeal was filed.
 {¶ 10} On appeal, Bank of America sets forth the following assignment of error:
 {¶ 11} "The trial court abused its discretion in sustaining plaintiff-appellee Robert Nesper's objections to the magistrate's Report and Recommendation, and in entering judgment in favor of Mr. Nesper (Judgment Entry March 19, 2003)."
 {¶ 12} In support of its assignment of error, Bank of America argues that the trial court ignored evidence of appellee's negligence, as well as evidence that appellee ratified his wife's forgery. Bank of America further argues that the magistrate correctly determined that allowing appellee to recover in this case would cause banks to be reluctant to cash any checks between a husband and wife "because of the potential problem of abuse."
 {¶ 13} It is well-settled that the trial court has the authority to determine whether or not to adopt a magistrate's report and recommendations, and that decision will not be overturned on appeal absent a finding of abuse of discretion.Wade v. Wade (1996), 113 Ohio App.3d 414, 419. An abuse of discretion connotes more than a mere error of law or judgment, instead requiring a finding that the trial court's decision was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.[1]
 {¶ 14} Generally, in Ohio, a husband is not answerable for the acts of his spouse, absent some other applicable theory of liability. See R.C. 3103.08; National City Bank, Norwalk v.Stang (1992), 84 Ohio App.3d 764, 768; Society Natl. Bank v.Kienzle (1983), 11 Ohio App.3d 178, 182. In this case, portions of the Uniform Commercial Code, as adopted by the Ohio Legislature in R.C. Chapter 1303, are applicable to appellee's claim.
 {¶ 15} Pursuant to R.C. 1304.24, a check that bears a forged drawer's signature is not "properly payable" and, if the bank pays a check under such circumstances, the bank is generally liable to its customer. Id.; RDH Enterprises, Inc. v. Farmers Merchants Bank, 2nd Dist. No. 19934, 2003-Ohio-6247, ¶ 8. Nevertheless, Bank of America seeks to show that appellee should be held responsible for his wife's forgery pursuant to R.C.1303.49 which states, in relevant part, that:
 {¶ 16} "(A) A person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection. * * *"
 {¶ 17} R.C. 1303.49(A) can be used as a defense to a claim of improper payment due to forgery. Micro Experts, Inc. v. EdisonTechnologies, Inc. (1997), 122 Ohio App.3d 394, 404, citingFifth Third Bank of Toledo, N.A. v. Dziersk, (6th Cir. 1993), 12 F.3d 600. Pursuant to R.C. 1303.49(C), the burden of demonstrating lack of ordinary care under R.C. 1303.49(A) falls on the person or entity that is asserting the preclusion.
 {¶ 18} The relationship between a bank and its customer is based on both statutory and contractual principles. R.C. 1301.03;Village Leasing, Inc. v. Society Natl. Bank of Cleveland
(1984), 15 Ohio App.3d 126, 128. The definition of "ordinary care" on the part of a bank is statutorily defined in R.C.1303.01(A)(9) as the observance of "reasonable commercial standards that are prevailing in the area * * *". In contrast, "ordinary care" on the part of a bank's customer, while not statutorily defined, has been described by Ohio courts as the duty of the customer to perform his or her obligations to the bank "with care, skill, reasonable expedience, and faithfulness * * *." Shamansky v. Massachusetts Fin. Servs. Co.
(1988), 127 Ohio App.3d 400, 405. This duty has been applied in cases where a party who has notice that his signature has been forged in the past is negligent in failing to prevent further forgeries by the same person. Ed Stinn Chevrolet, Inc. v.National City Bank (1986), 28 Ohio St.3d 221, 232, citing Official Comment 7 to former analogous section R.C. 1303.42.
 {¶ 19} In addition to its statutory remedies, Bank of America seeks to invoke the common-law defense of ratification. Ratification occurs when a party, by his conduct, affirms "a prior act which did not bind him but which was done or professedly done on his account whereby the acts, * * * is given effect as if it was originally authorized by him. Uhlenbrock v.Keybank, (Jan. 23, 2001), 10th Dist. No. 00AP-721, citing Restatement of the Law 2d, Agency (1958), Section 82, Comment b. Affirmance can be established by showing that the party had knowledge of the facts and manifested his intent to approve the transaction. Id.
 {¶ 20} As to the issue of ordinary care, the record demonstrates that appellee knew his wife was capable of financial misconduct, including forgery. The record also shows that appellee attempted to keep his wife from having access to his checkbooks by keeping them hidden in a room that was usually, although not always, locked. As set forth above, testimony was presented that Mrs. Nesper refused to respond when she was confronted by both appellee and Karyn King about the forgery. The record contains no evidence as to how Mrs. Nesper actually obtained the blank checks.
 {¶ 21} As to the issue of ratification, Bank of America directs our attention to that portion of the record which shows that appellee unsuccessfully attempted to discuss the forgery with his wife. The rest of the record shows that appellee notified both banks and the police of his wife's actions, filled out police reports, and filed the complaint herein seeking return of his funds. In addition, contrary to Bank of America's assertion, the magistrate did not specifically find that appellee had ratified his wife's actions, but rather found that reimbursing appellee for his wife's forgery would "border on unjust enrichment" and may make banks reluctant to cash checks between a husband and wife in the future.
 {¶ 22} This court has reviewed the entire record of proceedings in this case and, upon consideration thereof, we cannot say that the trial court abused its discretion by finding that the record contains insufficient evidence to show that appellee's failure to exercise ordinary care substantially contributed to the forging of his signature on check no. 275, or by not finding that appellee ratified his wife's forgery. Accordingly, the trial court did not err by refusing to adopt the magistrate's report and recommendations. Accordingly, Bank of America's assignment of error is not well-taken
 {¶ 23} The judgment of the Ottawa County Municipal Court, Small Clams Division, is affirmed. Court costs of these proceedings are assessed to appellant, Bank of America.
Judgment affirmed.
Knepper, J., Arlene Singer, J., concur.
[1] We note that, in making such a limited determination, we are not free to agree or disagree with the trial court's ultimate allocation of the loss due to appellee's forged signature.
 Judith Ann Lanzinger, J. concurs and writes separately.