OPINION
{¶ 1} Plaintiff-appellant, Nicole Gatch Jurcisin, appeals a decision of the Clermont County Court of Common Pleas granting judgment in favor of defendant-appellee, Fifth Third Bank, on appellant's claim for the wrongful honoring and payment of forged checks. For the reasons outlined below, we affirm the decision of the trial court. *Page 2 
 {¶ 2} This case involves a number of forged checks drawn on Jurcisin's personal checking account with Fifth Third by her former roommate, Farris Haile. The parties stipulated that Fifth Third paid three of Jurcisin's personal checks over a forged drawer's signature: Check No. 001 for $3,000 was dated January 17, 2003 and posted on Jurcisin's account on January 23, 2003; Check No. 002 for $2,500 was dated January 23, 2003 and posted on Jurcisin's account on January 27, 2003; and Check No. 003 for $4,000 was dated February 27, 2003 and posted on Jurcisin's account on March 5, 2003.
 {¶ 3} Jurcisin met Haile after moving from Cincinnati to Los Angeles in September 2002. The two met through mutual friends, and in November 2002 Jurcisin moved into Haile's Newport Beach condominium. In December 2002, Jurcisin and Haile took a trip to Mexico. While traveling, Haile's car broke down. They decided that Haile would return to California to purchase the necessary part for the repair and ship it to Mexico, where Jurcisin remained with the car. Because Haile had no credit cards and insufficient cash to buy a plane ticket back to California, Jurcisin purchased the ticket for her.
 {¶ 4} Jurcisin instructed Haile to open and pay her monthly credit card bill while she stayed in Mexico. They agreed that Jurcisin would repay Haile upon her return to California. Jurcisin also gave Haile her Fifth Third Enhanced Jeanie Card, which contained her signature on the back. Although Haile told police that Jurcisin had given her the pin number for the card as well, Jurcisin testified that she did not.
 {¶ 5} In early February 2003, Haile decided to move from Newport Beach to Laguna Beach. She communicated with Jurcisin via email, and Jurcisin authorized Haile to move her belongings to the new residence. This included her financial files. *Page 3 
 {¶ 6} Following her return to California in March 2003, Jurcisin discovered that her Fifth Third checking account was overdrawn and her checkbook was missing. Jurcisin confronted Haile, who eventually confessed to the forgeries and was arrested. Jurcisin sought reimbursement from Fifth Third for the three forged checks. After conducting an investigation, Fifth Third refused to reimburse Jurcisin upon concluding that Jurcisin's own negligence permitted Haile to perpetrate the forgeries.
 {¶ 7} In November 2004, Jurcisin filed a complaint against Fifth Third for honoring and paying the forged checks. The complaint sought relief in the amount $9,500 plus interest, representing the total amount of the three checks plus interest. A bench trial was conducted in July 2006. Following the trial, the court issued a decision finding in favor of Fifth Third. The decision was memorialized in a September 2006 judgment entry dismissing Jurcisin's claims with prejudice. Jurcisin timely appealed, raising one assignment of error.
 {¶ 8} "THE TRIAL COURT ERRED, AS A MATTER OF LAW, BY FINDING THAT PLAINTIFF FAILED TO EXERCISE ORDINARY CARE IN THE FORGERY OF THE THREE (3) BLANK CHECKS."
 {¶ 9} Jurcisin argues that the trial court misapplied the applicable law in concluding that she substantially contributed to the forgeries. Jurcisin urges that her case is distinct from the cases and official statutory comments relied upon by the trial court to support its judgment in favor of Fifth Third. According to Jurcisin, the cases cited by the court involve situations where the "wrongdoer" was aided in the crime by some action or negligence committed by the bank account holder. She insists that preclusion from recovery against the bank is only appropriate when the account holder plays some role, directly or indirectly, in the forgery or alteration of the check. *Page 4 
 {¶ 10} Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.Abney v. W. Res. Mut. Cas. Co. (1991), 76 Ohio App.3d 424, 429. As for questions of law raised by this appeal, we review such questions de novo, independently and without deference to the trial court's decision.Wilson v. ACS, Inc., 169 Ohio App.3d 720, 2006-Ohio-6704, ¶ 61.
 {¶ 11} Typically, a check containing a forged drawer's signature is not "properly payable" under R.C. 1304.24, and a bank that pays the check is generally liable to its customer. Ed Stinn Chevrolet, Inc. v.Natl. City Bank (1986), 28 Ohio St.3d 221, 227, modified on rehearing (1987), 31 Ohio St.3d 150. However, there are exceptions to this liability. One such exception is where the bank customer's failure to exercise ordinary care substantially contributes to the forgery. R.C.1303.49(A). Under those circumstances, the customer is precluded from asserting the forgery against a bank that paid the check in good faith. Id. If the bank also failed to exercise ordinary care and such negligence substantially contributed to the forgery, then the loss is allocated between the bank and the customer. R.C. 1303.49(B).
 {¶ 12} Conduct substantially contributes to a forgery if it is a contributing cause of the forgery and a significant factor in bringing it about. R.C. 1303.49, Official Comment 2. This "substantially contributes" test is less stringent than a "direct and proximate cause" test. Id. The burden of proving that a party's failure to exercise ordinary care substantially contributed to the forgery falls upon the party asserting the preclusion. R.C. 1303.49(C).
 {¶ 13} The definition of "ordinary care" differs depending on the actor. In reference to a person or entity engaged in business, such as a bank, "ordinary care" is *Page 5 
statutory defined as the "observance of the reasonable commercial standards that are prevailing in the area in which the person is located with respect to the business in which the person is engaged." R.C.1303.01(A)(9). In reference to a bank customer, "ordinary care" has been defined by Ohio courts as "the duty of the customer to perform his or her obligations to the bank `with care, skill, reasonable expedience, and faithfulness * * *'" Nesper v. Bank of America, Ottawa App. No. IT-03-012, 2004-Ohio-1660, ¶ 18, quoting Shamansky v. Massachusetts Fin.Servs. Co. (1988), 127 Ohio App.3d 400, 405.
 {¶ 14} Jurcisin does not argue that Fifth Third failed to exercise ordinary care, so we are not required to do a comparative negligence analysis. Cf. Micro Experts, Inc. v. Edison Technologies, Inc. (1997),122 Ohio App.3d 394, 404-05. Rather, the issue is whether the trial court erred in concluding that Jurcisin was precluded from recovering from Fifth Third because her actions substantially contributed to the forgeries.
 {¶ 15} Jurcisin repeatedly testified that she perceived Haile as a warm and caring person with an established job as a recruiter for a software company. She knew that Haile suffered from serious credit problems following her divorce and that she was unable to obtain any more credit. Jurcisin admitted that there were "red flags all over the place" with Haile. But she testified that she trusted Haile as a friend. As a result, she did not take precautions and guard her financial information from Haile. In fact, she handed over her debit card with her signature on it to Haile. And, although her financial files were in the back of her closet, she did not lock her room or otherwise safeguard the files. She entrusted Haile to open her mail and pay her credit card bills. She also allowed Haile to move her personal belongings, including her financial files, to a new apartment. As Jurcisin admitted during an interview with Fifth Third investigator Timothy *Page 6 
Spurlock, she made it very easy for Haile to commit the forgeries.
 {¶ 16} Also of note, Jurcisin entirely failed to keep track of her checking account while in Mexico. She did not put a hold on her checking account, receive or review account statements, forward her statements to a trusted friend or family member, or monitor her account online (even though she regularly accessed the internet to send email). She also opted to stay in Mexico for over two months, longer than was necessary for the car repair, while her checking account went unmonitored. The fact that Jurcisin was in Mexico did not nullify her duty to ensure that her checking account was being managed properly. Cf. Mueller v.Miller, 162 Ohio App.3d 698, 2005-Ohio-4213, ¶ 35.
 {¶ 17} Jurcisin's case is similar to an illustration given in the official comments to R.C. 1303.49. In that illustration, an employer kept its personalized blank check forms and a rubber signature stamp in an unlocked desk drawer. An unauthorized person forged checks using the forms and the stamp. The employer was precluded from recovering from the bank. The statutory comment provides:
 {¶ 18} "The trier of fact could find that Employer failed to exercise ordinary care to safeguard the rubber stamp and the check forms and that the failure substantially contributed to the forgery of Employer's signature by the unauthorized use of the rubber stamp." R.C. 1303.49, Official Comment 3, Case #1.
 {¶ 19} Jurcisin insists that the preclusion in this illustration turns on the fact that the employer failed to safeguard the rubber stamp, not because it failed to secure the checks. But the key consideration in the illustration is that the employer enabled the unauthorized person to access the checks and the stamp. Similarly, Jurcisin enabled Haile to access her personal checks (left in an unlocked file) and signature (on the back *Page 7 
of the debit card which she willingly gave to Haile). Further, as noted by Fifth Third, the official comments do not attempt to narrowly define what constitutes the failure to exercise ordinary care in these cases. Rather, R.C. 1349.03 requires a case-by-case examination of the facts and circumstances to determine whether a bank customer's conduct substantially contributed to a forgery.
 {¶ 20} Jurcisin cites the Sixth Appellate District's opinion inNesper, 2004-Ohio-1660, to support her argument that she should not be precluded from recovery for the forgeries. In Nesper, a husband was forced to hide his checkbooks from his wife because he knew she had a history of financial misconduct, including forgery. Id. at ¶ 20. He hid them in a room that was usually, but not always, locked. Id.
 {¶ 21} Similar to Nesper, Jurcisin was well aware that Haile had a history of financial problems and did not have access to much money at the time the forgeries occurred. Unlike the husband in Nesper, however, Jurcisin did nothing to safeguard her funds from Haile. She left her checks in an unlocked closet in an unlocked room. She gave her debit card to Haile, which had her signature on it. She also gave Haile permission to open her credit card statements. The husband inNesper did not put his wife in charge of any of his finances. So, although the court in Nesper did not hold the husband liable for the losses incurred when his wife stole his checkbook, we cannot find that Jurcisin exercised ordinary care under the present circumstances.
 {¶ 22} We conclude that the trial court's judgment in favor of Fifth Third was not against the manifest weight of the evidence. In addition, the trial court did not err as a matter of law in ruling that Jurcisin's failure to exercise ordinary care substantially contributed to the forgeries, thus precluding her recovery from Fifth Third.
 {¶ 23} Jurcisin's assignment of error is overruled. *Page 8 
 {¶ 24} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
 JUDGMENT ENTRY
The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.
It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Judgment Entry shall constitute the mandate pursuant to App.R. 27. Costs to be taxed in compliance with App.R. 24. *Page 1